IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JASON R. TODD,                          : Civil No. 1:25-CV-435
                                        :
            Plaintiff,                  :
                                        : (Chief Judge Brann)
      v.                                :
                                        : (Chief Magistrate Judge Bloom)
DERRY TOWNSHIP, et al.,                 :
                                        :
            Defendants.                 :

REPORT AND RECOMMENDATION

## I. Factual Background

This case comes before us for a screening review of the *pro se* plaintiff's amended complaint.[1]  (Doc. 278).  The plaintiff, Jason Todd, filed this action against Derry Township, Selective Insurance Company, and various individual employees of these entities on March 10, 2025. (Doc. 1).  Todd also filed a motion for leave to proceed *in forma pauperis*, which was granted by the court.  (Docs. 2, 28).  Magistrate Judge Schwab performed a screening review of Todd's complaint pursuant to 28 U.S.C.

_____

[1] This matter was initially assigned to Magistrate Judge Schwab, and the parties consented to magistrate judge jurisdiction.  (Doc. 68).  The matter has been reassigned to Chief Judge Brann and referred to the undersigned for further consideration of the plaintiff's amended complaint.  (Doc. 413).

§ 1915(e)(2)(B)(ii) and found that the complaint failed to state a claim but permitted Todd an opportunity to file an amended complaint. (Doc. 276). On May 12, 2025, Todd filed an amended complaint and attached exhibits, which is currently the operative pleading. (Doc. 278).

Todd's amended complaint raises claims of First Amendment retaliation and Fourteenth Amendment Equal Protection and Due Process violations pursuant to 42 U.S.C. § 1983, a Racketeer Influenced and Corrupt Organizations ("RICO") Act violation and a state law claim for intentional infliction of emotional distress. (Doc. 278 at 3-4). Todd's claims arise out of an incident in September of 2024 in Derry Township, Pennsylvania when he was assaulted by an individual named William Shoemaker. (*Id.* at 3). Todd claims that he suffered a traumatic brain injury from this assault, and that despite evidence of this injury being provided to the Derry Township Police Department, Shoemaker was only charged with and pleaded guilty to summary harassment. (*Id.*).

Todd believes that Derry Township suppressed evidence of his injuries and mishandled the investigation. (Doc. 278 at 3). He further claims that certain individual defendants engaged in retaliatory and harassing behavior toward him, including issuing him a cease and desist

letter, which caused him severe psychological distress. (*Id.*). Todd also asserts that Derry Township denied his Right to Know requests in 2020 and 2024, which he claims "block[ed] access to key evidence." (*Id.*). With respect to the insurance defendants, Todd alleges that these defendants issued him improper correspondence and ignored his claims. (*Id.*).

Based on these averments, Todd asserts a First Amendment retaliation claim against Defendant Armstrong; an Equal Protection and Due Process claim against all defendants; a RICO claim against the individual insurance defendants, Defendant Armstrong, and Derry Township; and a state law claim of intentional infliction of emotional distress against all defendants. (Doc. 278 at 3-4). As relief, Todd seeks monetary damages, as well as declaratory and injunctive relief. (*Id.* at 4).

After review, we conclude that the plaintiff's amended complaint fails to state a claim upon which relief can be granted. Accordingly, we recommend that the amended complaint be dismissed.

## II. Discussion

### A. Screening of *Pro Se* Complaints – Standard of Review

We have a statutory obligation to preliminarily review *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). We review such complaints to determine whether there are frivolous or malicious claims, or if the complaint fails to state a claim upon which relief may be granted. *Id.* This statutory preliminary screening mirrors review under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this legal benchmark, under federal pleading standards a plaintiff is required to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In determining whether a complaint states a claim for relief under this pleading standard, a court must accept the factual allegations in the complaint as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and accept "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-

movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court is not required to accept legal conclusions or "a formulaic recitation of the elements of a cause of action." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

As the Third Circuit Court of Appeals has aptly summarized:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

Generally, when considering a motion to dismiss, a court relies on the complaint and its attached exhibits, as well as matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court can also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Additionally, if the complaint relies on the contents of a document not physically attached to the complaint but whose authenticity is not in dispute, the court may consider such document in its determination. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on any other part of the record when deciding a motion to dismiss. *Jordan*, 20 F.3d at 1261.

Finally, when reviewing a *pro se* complaint, we are reminded that such complaints are to be construed liberally, "so 'as to do substantial justice.'" *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (quoting Fed. R. Civ. P. 8(f)). We must apply the relevant law even if the *pro se* plaintiff does not mention it by name. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)).

B. <u>This Complaint Should be Dismissed.</u>

After a review of the plaintiff's amended complaint, we conclude

that the plaintiff's amended complaint fails to state a claim upon which

relief can be granted and should be dismissed.

1. <u>Section 1983 Claims</u>

The plaintiff asserts several claims pursuant to 42 U.S.C. § 1983,

alleging violations of his constitutional rights under the First and

Fourteenth Amendments to the United States Constitution.  Section

1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges,
> or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity,
> or other proper proceeding for redress.

*See* 42 U.S.C. § 1983.  "Section 1983 imposes civil liability upon any

person who, acting under the color of state law, deprives another

individual of any rights, privileges, or immunities secured by the

Constitution or laws of the United States."  *See Shuman v. Penn Manor*

*School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citation omitted).  Section

1983 "does not create any new substantive rights but instead provides a

remedy for the violation of a federal constitutional or statutory right." *See id.* (citation omitted).

Accordingly, to state a claim under Section 1983, a plaintiff must plead two elements: (1) the conduct complained of was committed by a "person" acting under color of law; and (2) that conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) (citation omitted); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141–42 (3d Cir. 1990).

Additionally, a plaintiff alleging a Section 1983 claim must plead each defendant's personal involvement in the alleged wrong. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Personal involvement may be shown through allegations regarding the defendant's own conduct, or that the defendant had knowledge of the unconstitutional conduct and acquiesced in the behavior. *Id.*

### a. Personal Involvement – Derry Township Defendants

At the outset, we note that there are no factual allegations with respect to Derry Township Defendants Nutt, Wyckoff, Corado, Giovanniello, Zmuda, Jackson, Warner, and Shearer. The complaint

contains no allegations that these defendants took any action, or failed to take action, with respect to the alleged constitutional violations. Accordingly, the plaintiff has failed to plead the requisite personal involvement of these individual defendants, and they should be dismissed.

### b. State Action – Selective Insurance Defendants

Todd asserts his Equal Protection and Due Process claims against all of the defendants. But Todd has not alleged facts to show that Selective Insurance Group or its individual employees, were acting under color of state law and subject to liability under Section 1983. The Third Circuit has set forth three broad tests to determine if a private entity or actors can be said to have acted under color of state law:

> (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995)).

Here, the only allegations concerning Selective Insurance and its individual employees are that these defendants issued improper correspondence to the plaintiff and ignored his claims. (Doc. 278 at 3). In fact, Todd explicitly states that the individual defendants' actions were taken in their capacity "representing SIGI" when they allegedly issued improper correspondence and ignored his claims. (*Id.*). These facts do not suggest that these defendants can be characterized as state actors for purposes of Section 1983 liability. Accordingly, any Section 1983 claims against them should be dismissed.

### c. Equal Protection

Even affording the plaintiff every benefit of the doubt and assuming that the insurance defendants can be characterized as state actors, Todd's amended complaint fails to state an Equal Protection claim against any of the defendants. The Fourteenth Amendment provides that no state may "deny to any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV § 1. To state a claim for discrimination under the Equal Protection clause, the plaintiff must show that he endured purposeful discrimination based on membership in a protected class of individuals. *Robinson v. City of Pittsburgh*, 120 F.3d

1286, 1293 (3d Cir. 1997). Accordingly, he must establish that he was subjected to "(1) disparate treatment in relation to other similarly situated individuals, and (2) that the discriminatory treatment was based on [the protected characteristic]." *Johnston v. Univ. of Pittsburgh of Com. System of Higher Education*, 97 F. Supp. 3d 657, 667 (W.D. Pa. 2015).

Here, Todd's amended complaint alleges in a completely conclusory but vague fashion that all of the defendants denied him equal protection, and that he suffered harm based on his "veteran and disability status." (Doc. 278 at 3-4). But nothing alleged in the amended complaint even remotely suggests that the defendants engaged in purposeful discrimination because of Todd's disability or veteran status. Other than one conclusory sentence to that effect, Todd's amended complaint is devoid of allegations that would tend to show that any of the defendants engaged in purposeful discrimination toward him because of these two characteristics. Accordingly, the amended complaint fails to state an Equal Protection claim.

### d. Due Process

We reach a similar conclusion with respect to Todd's Due Process claim. The Fourteenth Amendment provides: "No state shall ... deprive any person of life, liberty, or property, without due process of law ..." U.S. Const. amend XIV. Todd fails to allege that any of the defendants deprived him of a liberty or property interest. Like his Equal Protection claim, Todd merely alleges in a conclusory fashion that the defendants violated his Due Process rights, citing his disabled veteran status. Without more, we cannot conclude that Todd has sufficiently alleged that any of the defendants violated his Due Process rights. Accordingly, any Due Process claims should be dismissed.

### e. Retaliation

Todd also asserts a First Amendment retaliation claim against Defendant Armstrong, alleging vaguely that Armstrong sent him a cease and desist letter "intended to chill public criticism and deter legal redress." (Doc. 278 at 3). To state a retaliation claim under the First Amendment, the plaintiff must show: (1) that he engaged in constitutionally protected conduct; (2) that he suffered "retaliatory action sufficient to deter a person of ordinary firmness from exercising his

constitutional rights"; and (3) a causal connection between the protected activity and the retaliatory act. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

In his amended complaint, arguably Todd alleges that he engaged in protected activity when he made Right to Know requests, reached out to the victim coordinator regarding his concerns of suppressed evidence, and publicly criticized Derry Township. (Doc. 278 at 2-3). He also seems to allege that the receipt of a cease and desist letter had a chilling or deterring effect on his exercise of his constitutional rights. (*Id.* at 3). But there are no allegations from which we can infer causation. In fact, the amended complaint is devoid of allegations pertaining to what the cease and desist letter contained, when it was sent, or if it was in any way related to Todd's alleged protected activity. Accordingly, we conclude that the amended complaint fails to state a First Amendment retaliation claim against Armstrong.

### f. Monell

Because Todd asserts claims against Derry Township, we read any such claim under § 1983 as asserting *Monell* liability against the Township. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S.

658, 695 (1978). A municipal entity may be liable for a constitutional violation under § 1983 if the violation was a direct result of the entity's policy, custom, or practice. *Id.* However, an entity may not be held liable "solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a plaintiff must demonstrate a "direct causal link" between the alleged constitutional violation and the municipal policy or custom. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

In cases where a plaintiff is alleging a failure to train officers, the plaintiff must demonstrate that the "municipality's failure to train police officers ... amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. To establish such a claim, the plaintiff must demonstrate "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents," coupled with "circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998) (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997)).

Initially, we note that because we have concluded Todd's complaint fails to state a constitutional violation against any of the individual defendants, any *Monell* claim against the Township must fail. *See Bridges v. Scranton Sch. Dist.*, 644 F. App'x 172, 178 (3d Cir. 2016). However, even if Todd's amended complaint stated a claim for a constitutional violation, there are no allegations to support *Monell* liability. The amended complaint fails to assert facts showing that any alleged constitutional violation was a result of the Township's policy or custom, or that any Township supervisor had contemporaneous knowledge of the incident or knowledge of prior similar incidents. Nor are there any allegations that a Township supervisor communicated approval to an offending subordinate. Rather, the amended complaint seeks to hold the Township liable on a theory of *respondeat superior*, which is insufficient to establish *Monell* liability. *Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Therefore, any *Monell* claim against the Township fails.

## 2. RICO Claim

Todd also brings a RICO claim against Armstrong, Derry Township, and the individual insurance defendants, Marchioni, Lanza, and Swartz. "RICO provides for civil actions . . . by which '[a]ny person injured in his business or property' by a RICO violation may seek treble damages and attorney's fees." *Rotella v. Wood*, 528 U.S. 549, 552 (2000) (quoting 18 U.S.C. § 1964(c)). RICO violations are set forth in § 1962, and "[a] common thread running throughout § 1962 is that an injured party must demonstrate that the defendant was engaged in a 'pattern of racketeering activity.'" *Tabas v. Tabas*, 47 F.3d 1280, 1289 (3d Cir. 1995) (en banc). The statute sets forth enumerated acts that constitute "racketeering activity." *See* § 1961(1)(A)-(G). Further, the statute requires that a plaintiff allege injury to business or property as a result of the alleged RICO violation. § 1964(c); *Medical Marijuana, Inc. v. Horn*, 604 U.S. --, 145 S. Ct. 931, 939 (2025).

Todd alleges that these defendants engaged in racketeering activity, including mail fraud.[2] (Doc. 278 at 4). However, other than this

---

[2] We note that the other conduct alleged to constitute racketeering activity—"suppression of evidence" and "insurance deception"—do not fit

conclusory legal assertion, there are no facts alleged in the amended complaint from which we can even infer that these defendants engaged in conduct that constituted mail fraud. *See United States v. Pharis*, 298 F.3d 228, 233-34 (3d Cir. 2002) (setting forth the elements of mail fraud as: "(1) a scheme to defraud; (2) use of the mails to further that scheme; and (3) fraudulent intent."). Additionally, while Todd has alleged personal injury due to the defendants' alleged conduct, the complaint contains no allegations that Todd's "business or property" has been harmed by the defendants. Accordingly, the plaintiff's RICO claim should be dismissed.

### 3. ADA Claim

Based upon some of his filings, the plaintiff may be attempting to assert a claim of discrimination under the Americans with Disabilities Act ("ADA"). While the amended complaint does not actually assert such a claim, out of an abundance of caution, we will address the plaintiff's allegations as asserting a claim under Title II of the ADA. 42 U.S.C. § 12132.

---

within the definition of "racketeering activity" under the statute. *See* § 1961(1).

17

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II, a plaintiff must show (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of services or programs; and (3) that the exclusion or denial was because of his disability. *Durham v. Kelly*, 82 F.4th 217, 225 (3d Cir. 2023).

Assuming Todd's amended complaint sufficiently alleges that he is a qualified individual with a disability, he fails to allege how, if at all, he was excluded from participation in or denied the benefits of services provided by Derry Township because of a disability. Rather, as we have noted, the amended complaint vaguely asserts that the defendants' conduct was directed toward Todd because he is a disabled veteran. This type of conclusory allegation is insufficient to state a claim against this public entity under the ADA.[3] Moreover, to the extent any ADA claim is

---

[3] To the extent Todd's claims extend to Selective Insurance, they would not be a proper defendant to an ADA claim since "the proper defendant for a Title II ADA claim is the public entity or an individual who controls

asserted against an individual defendant, courts within this circuit have concluded that there is no individual liability under the ADA. *See Young v. Spyker*, 2024 WL 2401983, at *4 (M.D. Pa. May 23, 2024) (citing *Scott v. Pa. Dep't of Corrs.*, No. 3:24-cv-00335, 2024 WL 1916725, at *4-5 (M.D. Pa. May 1, 2024); *Snider v. Pa. DOC*, 505 F. Supp. 3d 360, 405-06 (M.D. Pa. 2020)). Therefore, we conclude that the amended complaint fails to state a claim under the ADA.

### 4. Intentional Inflicton of Emotional Distress

Todd also asserts a state law claim of intentional infliction of emotional distress against all defendants, alleging that their conduct—intimidation, obstruction, and targeting against him because he is a veteran—was extreme and outrageous and caused him severe emotional distress. A claim for intentional infliction of emotional distress under Pennsylvania law requires that a plaintiff establish: (1) extreme and outrageous conduct by the defendant; (2) that the conduct is intentional or reckless; (3) that the conduct causes emotional distress; and (4) that the distress suffered is severe. *Hoy v. Angelone*, 691 A.2d 476, 481 (Pa.

---

or directs the functioning of a public entity." *Miller v. Little*, 2023 WL 3674336, at *8 (E.D. Pa. May 25, 2023).

Super. Ct. 1997) (citations omitted). For conduct to be considered extreme and outrageous, it must go "beyond all possible bounds of decency," so as to be "regarded as atrocious, and utterly intolerable in a civilized society." *DiSalvio v. Lower Merion High School Dist.*, 158 F.Supp.2d 553, 561 (E.D. Pa. 2001) (quoting *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 998, 990-91 (Pa. 1987)).

Here, Todd's allegations regarding the defendants' conduct are conclusory in nature and cannot support a claim for intentional infliction of emotional distress. The amended complaint merely asserts that the defendants engaged in conduct such as "intimidation," "obstruction," and "veteran-targeting." (Doc. 278 at 4). Todd further alleges that Swartz and Armstrong "engaged in harassing, retaliatory, and obstructive behavior—including verbal threats, intimidation, and misleading legal correspondence—causing Plaintiff severe psychological distress." (*Id.* at 3). But the Pennsylvania Supreme Court has found that "liability . . . does not extend to mere insults, threats, annoyances, petty oppressions, or other trivialities." *Kazatsky*, 527 A.2d at 991 (quoting Restatement (Second) of Torts § 46 cmt. d). We cannot conclude from Todd's vague and conclusory allegations of threats and intimidation that this conduct rises

20

to the level of extreme and outrageous necessary to support a claim for intentional infliction of emotional distress. Accordingly, the amended complaint fails to state a claim for intentional infliction of emotional distress under Pennsylvania law and should be dismissed.[4]

C. **The Plaintiff's Motions for Miscellaneous Relief should be Denied.**

The plaintiff has filed over 20 motions for various miscellaneous relief. (Docs. 287, 298, 304, 308, 310, 323, 330, 349, 351, 356, 359, 362, 365, 369, 383, 386, 397, 404, 406, 408, 415, 418, 419, 420, 421). We conclude that these motions should be denied.

Several of these motions seek the recusal of Magistrate Judge Schwab and reassignment of this matter to a district court judge. (*See* Docs. 298, 308, 349, 351). These motions should be denied as moot, as this matter has been reassigned. Two such motions also seeks to add Magistrate Judge Schwab as a defendant to this action. (Docs. 404, 415). Construing these motions as ones for leave to amend his complaint to add Judge Schwab as a defendant, we conclude that any amendment would

---

[4] We further note that the court may decline to exercise supplemental jurisdiction over this state law claim upon a finding that the plaintiff's federal claims fail. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966).

be futile because Judge Schwab would be entitled to absolute immunity

from claims arising out of her performance of her judicial duties. *Mireles*

*v. Waco*, 502 U.S. 9, 12 (1991); *Kwasnik v. LeBlon*, 228 F. App'x 238, 243

(3d Cir. 2007). Accordingly, these motions should be denied.

Other motions seek various rulings regarding orders Judge Schwab

entered in this matter, previous motions that were filed and unopposed,

judicial "audits" and investigations into judicial officers, and the

plaintiff's offers of various pieces of evidence to support his claims. (Docs.

287, 304, 310, 323, 330, 356, 359, 362, 365, 369, 383, 386, 397, 406, 408,

418, 421, 422). In our view, because we have concluded that the plaintiff's

amended complaint fails to state a claim, and because many of these

motions are procedurally improper and are not accompanied by a

supporting brief in violation of Local Rule 7.5, these motions should be

denied or deemed withdrawn.[5]

Todd also filed a motion for preliminary injunction, which appears

to assert that he would prevail on the "unopposed motions" he has filed

---

[5] It appears that the plaintiff has filed one, three-page brief in support of several of these motions. (Doc. 411). This filing does not address the substance of the plaintiff's motions and should not be construed as complying with Local Rule 7.5.

in this matter. (Doc. 419). But Todd has not met the substantive requirements under Rule 65 to show he is entitled to any preliminary injunctive relief. "A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)). The Supreme Court has underscored that "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation and quotation marks omitted). Because we have concluded that Todd's amended complaint fails to state a claim upon which relief can be granted, Todd cannot show a likelihood of success on the merits of his claims. Accordingly, any motion for injunctive relief should be denied.

Todd also filed a motion to compel records from the court. (Doc. 420). In this motion, he seeks to compel the court to provide him with

internal communications regarding this case, as well as metadata concerning docket entries, citing the Federal Rules of Civil Procedure governing discovery between parties, as well as the United States Constitution and the judicial code of conduct. (*Id.*). Put simply, the discovery process outlined in the Federal Rules of Civil Procedure, the Constitution, and the judicial code of conduct do not give a *pro se* litigant unfettered access to internal court communications, if any exist. The plaintiff provides no authority for the disclosure of such information. Accordingly, this motion should be denied.

In closing, we make the following observations. The plaintiff appears to take issue with this court's handling of his case, from ruling too quickly on motions to not ruling quickly enough. He also complains of the court "suppressing" evidence of his mental health impairments and disability, which he claims violates his rights under the ADA. There has been no suppression of documents by this court. The plaintiff's filings remain on the docket as he filed them. Many documents that the plaintiff characterizes as "unopposed motions" are not motions at all but are "notices" of random pieces of evidence he has filed. However, documents concerning the plaintiff's mental health impairments, injuries, or

disability, as well as veteran status, shed no light on the claims asserted in his amended complaint. Nor can we consider such documents in determining whether the claims in the amended complaint state a claim upon which relief can be granted, as they are not attached to the plaintiff's amended complaint. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

In addition, while Todd continues to complain of judicial misconduct and ethical violations against the judges of this court, there is no indication that any judge of this court has exhibited bias or prejudice against Todd because of his disability or veteran status, or for any other reason. Rather, the court has attempted to address Todd's myriad filings, and in doing so, has concluded that Todd's amended complaint legally fails to state a claim against the defendants he has sued.

## III.  Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the amended complaint be dismissed for failure to state a claim upon which relief can be granted. IT IS FURTHER RECOMMENDED that Todd's outstanding motions for miscellaneous relief (Docs. 287, 298, 304,

308, 310, 323, 330, 349, 351, 356, 359, 362, 365, 369, 383, 386, 397, 404,

406, 408, 415, 418, 419, 420, 421) be DENIED.

The parties are further placed on notice that pursuant to Local Rule

72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 2nd day of June 2025.


*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge